**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Brittany Alicia Fraijo - 001<br>Desiree Destiny Acedo Garcia - 003,<br><br>Defendants. | No. CR-20-00248-001-TUC-JCH (DTF)<br><br>**ORDER ON GOVERNMENT'S MOTIONS IN LIMINE** |

Pending before the Court are various motions in limine filed by the United States including: (1) Motion in Limine ("MIL") to Admit Defendants' Non-Custodial Silence (Doc. 154); (2) MIL to Exclude Hearsay Statements Attributed to Agents (Doc. 157); (3) MIL to Exclude Defendants' Irrelevant Post-Arrest Hearsay Statements (Doc. 158); and (4) MIL to Exclude 404(b) Evidence Regarding Co-Defendant (Doc. 159) (collectively "the government's MIL's"). Trial is set to begin June 6, 2022.

On March 24, 2022, the Court held a Final Pretrial Conference. (*See* Doc. 140.) The Court heard argument on various motions, ruled on some,[1] and took the MIL's referenced above under advisement. (*See* Doc. 171.) This is the Court's written order.

**I.  ALLEGATIONS**

Defendants are each charged by Indictment with one count of conspiracy to possess with intent to distribute fentanyl, in violation of 21 U.S.C. § 846, and one count of

---

[1] The Court granted the following motions by the government: (1) MIL to Exclude Self-Serving Hearsay Statements (Doc. 156), without objection; (2) MIL re Government's Intent to Admit FRE 404(b) Evidence (Doc. 160), without objection.

possession with intent to distribute fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(vi). (Doc. 1).

The allegations are as follows: on October 2, 2019,[2] Co-defendants Brittany Alicia Fraijo ("Fraijo"), Desiree Destiny Acedo Garcia ("Garcia"), and Kimberly Leon ("Leon") took a day trip to Nogales, Sonora, Mexico, before returning to the United States through the DeConcini Port of Entry and driving north together on Interstate-19. (Doc. 117 at 1-2.) At a Border Patrol checkpoint near Amado, Arizona, agents discovered that each woman had three packages of fentanyl—a combined total of 1.9 kilograms—concealed under her clothes. (Doc. 117 at 1.) Leon pleaded guilty (Doc. 77) and was sentenced on June 10, 2021. (Doc. 109.)

## II. DEFENDANTS' PROFFER

Fraijo and Garcia each raised a duress defense and submitted their supporting proffer summarizing their expected testimony. (*See* Doc. 117; Doc. 117-1; Doc. 117-2). Fraijo and Garcia contend that they smuggled drugs across the border because they were threatened with death by an unknown drug dealer. (*See* Doc. 117-1; See Doc. 117-2.) Relevant to Fraijo and Garcia's duress defense are their claims regarding Leon's role in the underlying events, specifically: Leon guided Fraijo and Garcia into Mexico so they could obtain drugs for personal use (Doc. 117-1 at 3; Doc. 117-2); Leon introduced Fraijo and Garcia to the unknown drug dealer in Mexico (Doc. 117-1 at 3; Doc. 117-2); the drug dealer asked for driver's licenses from Fraijo and Garcia but not Leon (*See* Doc. 117-1; *See* Doc. 117-2); Leon showed Fraijo and Garcia where to hide the packages of drugs on their bodies (See Doc. 117-1 at 3); Leon accompanied Fraijo and Garcia back across the border into the United States (Doc. 117-1 at 3; Doc. 117-2); Leon stated a familiarity with the Border Patrol agent at the border crossing (Doc. 117-1 at 3; Doc. 117-2 at 3); and Leon accompanied Fraijo and Garcia on the drive to the inspection point on Interstate 19 near Amado, Arizona. (Doc. 117-2 at 2.)

---

[2] This is the date specified in the Indictment. (Doc. 1.) Both proffers indicate the events transpired on October 3, 2019. (*See* Doc. 117-1; Doc. 117-2.)

The Court previously summarized the events at the inspection point as follows:

> Fraijo, Garcia, and Leon traveled in Fraijo's car to the Border Patrol checkpoint on Interstate 19 near Amado, Arizona. (Doc. 117 at 2). Border Patrol agents directed the women to a secondary checkpoint where all three consented to a search. (Doc. 117-2 at 4). During Garcia's pat-down, the agent noticed a bulge in her groin area. (Doc. 117-2 at 4). Garcia explained, "…[the Border Patrol agent] asked me if I was on my period. …. I told her that I was on my period." (Doc. 117-2 at 4). After patting them down, the agent asked the same question of Fraijo and Leon. (Doc. 117-2 at 4). All three women responded that they were menstruating. (Doc. 117-1 at 4; Doc. 117-2 at 4). The agent then took Leon to a "shed" and privately searched her. (Doc. 117-1 at 4; Doc. 117-2 at 4).
>
> The agent next took Fraijo to the "shed" and told her, "we found packages on your friend [Leon] do you have any on you as well and do you know what is inside of them?" (Doc. 117-1 at 4). Fraijo responded to the agent, "I'm going to be honest with you I do have packages on me but I have no idea what is inside of them." (Doc. 117-1 at 4). Similarly, during Garcia's private search, Garcia told the agent that she was carrying packages and didn't know what the packages held. (Doc. 117-2 at 4).

(Doc. 122 at 3–4.) After the search, the Defendants were read their *Miranda* rights and arrested. (Doc. 117-1 at 5 ("I was then escorted back to one of the cars waiting for [co-defendant Fraijo] to get done being [sic] searched. While waiting in the car for about 30 minutes or so a male officer comes to the car where he proceeds to read me my Miranda Rights [sic] in the vehicle.").)

The government filed an MIL to preclude the proffered duress defense. (Doc. 117.) The Court found Fraijo's and Garcia's proffers sufficient to make a prima facia showing of duress and denied the government's motion on September 3, 2021. (Doc. 122.) Most of the government's pending motions relate to Fraijo's and Garcia's duress defense, specifically with regards to events transpiring before and after their arrest. The Court considers each motion in turn.

### III. ANALYSIS

#### A. MIL to Admit Defendants' Non-Custodial Silence (Doc. 154)

Generally, comments on a defendant's silence violate the Fifth Amendment privilege against self-incrimination. *United States v. Busyhead*, 270 F.3d 905, 911 (9th Cir. 2001). Citing both *United States v. Oplinger* and *United States v. Beckman*, the government seeks to admit the Defendants' non-custodial, pre-*Miranda* silence arguing that such evidence has no constitutional implications, is directly relevant to the Defendant's duress defense, and may be used for impeachment and substantive evidence of guilt. *Oplinger*, 150 F.3d 1061, 1065-67 (9th Cir. 1998) (overruled on other grounds); *Beckman,* 298 F.3d 788, 795-96 (9th Cir. 2002); (Doc. 154 at 1). The government further argues, "that the defendants could have alerted the authorities at the DeConcini Port of Entry and/or the Border Patrol Interstate 19 (I-19) immigration checkpoint to their alleged plight but did not do so." (Doc. 154 at 2.)

*Miranda* rights are triggered during a custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). "[O]nce the government places an individual in custody, that individual has a right to remain silent in the face of government questioning, regardless of whether the *Miranda* warnings are given." *United States v. Velarde-Gomez*, 269 F.3d 1023, 1029 (9th Cir. 2001)

A defendant may be impeached with their pre-arrest noncustodial silence if they choose to testify at trial. *Jenkins v. Anderson*, 447 U.S. 231, 239 (1980); *see also Velarde–Gomez*, 269 F.3d at 1029 n. 1, 1033 (explaining that the government may use a defendant's pre-*Miranda* silence for impeachment, but it may not do so in its case-in-chief."). Further, pre-arrest, pre-*Miranda* silence may be used as substantive evidence of guilt. *Oplinger*, 150 F.3d at 1066–67.

In *Oplinger*, the Ninth Circuit held that the prosecution's comments on the employee's silence, in response to employer's accusations of criminal conduct, did not violate Fifth Amendment privilege against self-incrimination and due process rights. *Id.* The defendant argued on appeal that he remained silent, in part, because he knew "that his

answers would be reported to the FBI, and argued that 'non-custodial, pre-arrest, and investigatory assertions' of the right to remain silent are protected[.]" *Id.* at 1066 (internal citation and quotation omitted). In so holding, the Ninth Circuit explained, "the government made no effort to compel [the defendant] to speak, he was free to act as he pleased." *Id.* at 1067. "Consequently, the constitutional privilege against compelled self-incrimination simply did not come into play." *Id.*

In *Beckman*, Beckman was convicted of smuggling more than $1 million of marijuana from Mexico into the United States for Gregg. 298 F.3d 788 (9th Cir. 2002). Beckman's primary defense was that he was tricked into smuggling the marijuana. *Id.* at 791–792. At trial, Beckman testified that he met Gregg through a mutual acquaintance, and Gregg invited him on a trip to Mexico to race dune buggies. *Id.* at 791. After nearly a week in Mexico, Beckman, Gregg, and others proceeded by caravan north, and Gregg asked Beckman to drive a truck with a hitched trailer through the border checkpoint. *Id.* at 792. Beckman testified that he drove the truck alone. *Id.* At the primary checkpoint, inspectors asked to search the trailer and Beckman responded that he didn't have the keys. *Id.* A search revealed nearly 1,541 pounds of marijuana hidden behind false panels in the trailer. *Id.* In its closing the government suggested that if Beckman's defense was true he would have offered it during the primary inspection. *Id.* at 795. "The government also argued that Beckman could have told inspectors that he thought Gregg was behind him in the third truck." *Id*. In holding that no error resulted from the government's summation on Beckman's silence, the Ninth Circuit reasoned, "[t]hese comments refer only to Beckman's silence at primary inspection, before arrest and before *Miranda* warnings had been given." *Id.* Relying on *Oplinger*, the Ninth Circuit confirmed, "[t]he use of defendant's pre-arrest, pre-*Miranda* silence is permissible as impeachment evidence and as evidence of substantive guilt." *Id.*

Here, Defendants crossed the border together on foot and were stopped at the DeConcini Port of Entry and, later, at the Border Patrol Interstate 19 immigration checkpoint. At the DeConcini Port of Entry, Defendants were not questioned. Later, at the

Border Patrol Interstate 19 immigration checkpoint, the three co-defendants were stopped in their vehicle and referred to a secondary inspection location where agents asked them to get out of the vehicle. All three co-defendants consented to a search and were privately searched. Defendants did not exercise their right to remain silent at any time during questioning; rather, they answered the agent's questions. *See United States Ramirez-Estrada*, 749 F.3d 1129, 1134 (9th Cir. 2014). Specifically, Defendants admitted to carrying packages on their person. (*See* Doc. 117-1 at 4 (Fraijo responded to the Border Patrol agent, "I'm going to be honest with you I do have packages on me but I have no idea what is inside of them."); *see also* Doc. 117-2 at 4 (Garcia responded to the Border Patrol agent, "I told her I was [carrying packages] and she asked if I knew what was in the packages; I told the officer I didn't know what was in the packages.")). Neither Fraijo nor Garcia mentioned the man who threatened them in Mexico or claimed to feel threatened by Co-Defendant Leon. (*See* Doc. 117-1 at 4; Doc. 117-2 at 4). After the search, Defendants were given *Miranda* warnings, arrested, and invoked their right to remain silent. (Doc. 117-1 at 5.)

The Court will grant the MIL (Doc. 154). If, as expected at trial, Defendants testify and assert a duress defense, the government may offer for impeachment and substantive evidence of guilt the Defendants' pre-arrest silence regarding the duress they now claim they were under at the time.

**B.  MIL to Exclude Hearsay Statements Attributed to Agents (Doc. 157)**

The government references statements attributed to law enforcement agents in the Defendants' proffers. (*See* Doc. 157 at 1.) Specifically, each proffer contains multiple statements made by law enforcement agents as Defendants were transported, processed, and released following their arrest on October 2, 2019.[3] The government contends, "[t]he

---

[3] Doc. 117-1 at 5 ("We then drove back to Tucson while on the drive back one of the DEA agents had told Desiree and I[,] 'if you guys want to make money you can always work for us' but we ignored it."); Doc. 117-2 at 5 ("We asked if there were [sic] going to be any future legal action taken upon us, and they told us there wasn't. They said that they made calls to the U.S. Marshal and U.S. Attorney to inform them that we weren't a threat to society."); Doc. 117-2 at 5 ("[The agent] also mentioned the fact that since we were let go [sic], the guys on Mexico's side might want to go after us since we didn't get the packages to where they needed to go.").

agents' alleged statements were made out of court and would be presented for the truth of the matter asserted—that the defendants are not 'a threat to society' and that they had reason to fear retribution from Mexico, in this example—rendering them inadmissible hearsay." (Doc. 157 at 3.)

At the Final Pretrial Conference, Defendants asserted that the statements would not be used to prove the truth of the matter asserted, but rather to show Defendants' state of mind and corroborate that, "they had reason to be in fear." (Hr'g Tr. at 61:1:18, 63:1:5, *USA v. Fraijo et al, et al.*, 4:20-cr-00248-TUC-JCH (March 24, 2022).) The Court questioned the parties on the relevance of Defendants' state of mind following Defendants' arrest and after they had allegedly committed the crime. (Hr'g Tr. at 61:1:18– 68:1:8, *USA v. Fraijo et al, et al.*, 4:20-cr-00248-TUC-JCH (March 24, 2022).)

"The element of immediacy requires that there be some evidence that the threat of injury was present, immediate, or impending. '[A] veiled threat of future unspecified harm' will not satisfy this requirement." *United States v. Contento-Pachon*, 723 F.2d 691, 694 (9th Cir. 1984) (internal citation and quotation omitted). The threat "may be express or implied, so long as it is an immediate threat as distinguished from generalized fear." *United States v. Navarro*, 608 F.3d 529, 533 (9th Cir. 2010). Accordingly, the immediacy element is concerned with threats that "compel[] the defendant to commit the illegal action." *United States v. Vasquez-Landaver*, 527 F.3d 798, 802 (9th Cir. 2008).

Statements made to the Defendants post-arrest are not relevant. Post-arrest statements to the Defendants could not have caused the duress that they claim compelled them to smuggle fentanyl into the United States. To the extent Defendants seek to admit the statements to show that the agents believed the Defendants were "not a threat" or were in danger from the "cartels", the statements are hearsay offered to prove the truth of the matter asserted.

The Court will grant the MIL. (Doc. 157.) The agents' post-arrest statements to Defendants are precluded from evidence. Defendants may revisit this issue at trial if the government "opens the door."

**C. MIL to Exclude Irrelevant Post-Arrest Hearsay Statements (Doc. 158)**

Fraijo has disclosed to the government three exhibits consisting of text message exchanges that took place after the Defendants' arrest on October 2, 2019. (Doc.158-1; Doc. 158-2; Doc. 158-3.) The exhibits include screenshots of phone message conversations, and according to the government, all contain inadmissible hearsay, involving multiple levels of hearsay. (Doc. 158 at 2.) The government moves to preclude the exhibits and contends the screenshots are irrelevant under Rule 402, needlessly confusing to the jury under Rule 403, and constitute inadmissible hearsay under Rule 802. (Doc. 158.)

As a threshold matter, Defendants do not explain how such text messages will be authenticated. *See* Fed. R. Evid. 901(a). The text messages do not capture a conversation between two individuals, but rather include a mix of forwarded messages and screenshots seemingly from a mobile phone, Facebook, and Snapchat. Fraijo's defense counsel, previously characterized one exhibit as follows:

> Ms. Fraijo was still under threat of death after she was released without charges, as shown by the text messages forwarded by Ms. Leon to Ms. Fraijo and Ms. Garcia. In the attached text message supposedly from the drug traffickers forwarded by Leon to Garcia and Fraijo, they are told they need to come up with $44,000.00 or "Jamaicans" are watching them and "just because he's in Mexico doesn't mean nothing" clearly implying that they and their families are still in danger in Tucson.

(Doc. 118 at 4) (describing Doc. 118-1 which is the same image as 158-1). It is unclear whether adequate authentication or foundation may be provided by any witness.

To the extent the communications are offered to corroborate Defendants' claims that they were threatened by drug dealers or the "cartel", the communications are inadmissible hearsay. Defendants claim the communications are not being offered for the truth of the matter asserted, but instead for their impact on the Defendants' state of mind. Again,

Defendants' state of mind post-arrest is irrelevant to their duress defense.

The Court will grant the MIL (Doc. 158). The post-arrest communications attached to the MIL are precluded. If the government "opens the door" at trial, Defendants may revisit this ruling.

### D. Motion to Exclude 404(b) Evidence Regarding Co-Defendant (Doc. 159)

Generally, Fed. R. Evid. 404(b) precludes the use of other acts or crimes to prove a witness's character or to prove that on a particular occasion the witness acted in conformity with that character. *United States v. Bradley*, 5 F.3d 1317, 1319 (9th Cir. 1993). Other acts evidence may be admitted under Rule 404(b) for a purpose other than proving character, such as proving motive, intent, preparation, plan, or knowledge. The government requests the preclusion of: (1) the complaint filed against Leon in case 18-mj-00505-EJM;[4] (2) evidence of Leon's plea in this case (20-cr-00248-TUC-JCH-DTF); (3) her conviction for alien smuggling in case 20-cr-2371-TUC-JCH(DTF);[5] (4) and any other criminal activity that post-dates the offense in this case. (*Id.* at 1.)

Rule 404(b) applies when a defendant seeks to offer such evidence against any other person, including a co-defendant. *United States v. McCourt*, 925 F.2d 1229 (9th Cir. 1991). "[T]he standard of admissibility when a criminal defendant offers similar acts evidence as a shield need not be as restrictive as when a prosecutor uses such evidence as a sword." *United States v. Wright*, 625 F.3d 583, 608 (9th Cir. 2010) *superseded by statute* (internal quotation omitted). "[C]ourts should indulge the accused when the defendant seeks to offer [other acts] evidence of a third person for an issue pertinent to the defense other than propensity[.]" *McCourt*, 925 F.2d at 1236.

Permissible applications include showing a defendant's state of mind at the time of the offense. In *United States v. Saenz*, the Ninth Circuit found that "a defendant claiming

---

[4] In case 18-mj-00505-EJM, the government charged Leon with a false statement made in connection with the purchase of a firearm on or about July 7, 2018, in violation of 18 U.S.C. § 924(a)(1)(A). (*See* 18-mj-00505-EJM, Doc. 1.)

[5] In case 20-cr-2371-TUC-JCH-DTF, the government charged Leon with transporting an illegal alien for profit on or about October 8, 2020, in violation of in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii) and (a)(1)(A)(v)(I). (*See* 20-cr-2371-TUC-JCH-DTF, Doc. 1.) On December 18, 2020, Leon pleaded guilty to the Indictment. (*See* 20-cr-2371-TUC-JCH-DTF, Doc. 17.)

self-defense may show his own state of mind by testifying that he knew of the victim's prior acts of violence." 179 F.3d 686, 689 (9th Cir. 1999). In *United States v. James*, the Ninth Circuit similarly held that extrinsic corroborating evidence of the victim's violence is admissible to show the defendant's state of mind. 169 F.3d 1210, 1214-15 (9th Cir. 1999) (en banc) ("Because the crux of [the defendant's] defense rested on her credibility and because her credibility could be directly corroborated through the excluded documentary evidence [of the victim's past violent acts], exclusion of the documents was prejudicial and more probably than not affected the verdict."). Even if these requirements are satisfied, a court may nevertheless exclude evidence of other crimes or acts if its probative value is substantially outweighed by the danger of unfair prejudice under Fed. R. of Evid. 403. *United States v. Romero*, 282 F.3d 683, 688 (9th Cir. 2002).

### 1. The 2018 Complaint[6]

The July 2018 Complaint charged Leon with knowingly making a false statement and representation in connection with the purchase of a firearm. (*See* 18-mj-00505-EJM, Doc. 1.) The government moves to preclude the 2018 Complaint as more prejudicial than probative under Rule 403 and as inadmissible hearsay under Rule 802. (Doc. 159 at 2.) The government further contends that the 2018 Complaint is offered only to show that Leon acted in accordance with her character in violation of Rules 404(a) and 405(b).

Defendants did not reference the 2018 Complaint, or the allegations made therein, in their proffer. Defendants now offer the 2018 Complaint to show Leon was connected to the "cartel" in 2020 because she had engaged in "cartel activity" in 2018. The 2018 Complaint's probative value is highly questionable. It is unclear Leon was buying guns for

---

[6] The government also seeks to preclude Defendant Fraijo from calling AUSA Angela Woolridge to testify because she prosecuted the 2018 Complaint. (*See* 18-mj-00505-EJM, Doc. 1; Doc. 159 at 3.) Defendants apparently want Ms. Woolridge to testify about the charges and evidence related to Leon in the case she handled. There is no longer an argument for Ms. Woolridge to testify given the Court's ruling that the 2018 other acts evidence is precluded.  Also, the Department of Justice has promulgated certain regulations for parties to demand testimonial or documentary evidence. *See* 5 U.S.C. § 301; 28 C.F.R. 16.21–16.29. Defendants have not complied with these regulations.

- 10 -

a "cartel" in 2018 and, even if she were, there is no indication Leon's alleged work for the "cartel" in 2018 is connected to the individuals who allegedly threatened Defendants in Mexico on October 2, 2019. (Hr'g Tr. at 73:1:11, *USA v. Fraijo et al, et al.*, 4:20-cr-00248-TUC-JCH (March 24, 2022).)

The 2018 Complaint is inadmissible under Rule 403. The 2018 Complaint is unfairly prejudicial to the extent it would cast Leon in a negative light for having been charged with a crime in 2018. Also, the admission of the 2018 Complaint would result in a collateral mini-trial regarding the unrelated events in 2018, which would waste valuable trial time. Under Rule 403, these two points each alone outweigh any probative value the 2018 Complaint may have. Finally, the 2018 Complaint is plainly inadmissible under Rule 404 to show Leon's character and that she acted in conformity with that character.

### 2. The 2020 Alien Smuggling Conviction

Leon was convicted for alien smuggling on December 18, 2020. (*See* 20-cr-2371-TUC-JCH-DTF, Doc. 17.). The facts giving rise to the alien smuggling conviction post-date Leon's offense in this case. Therefore, the 2020 alien smuggling conviction is irrelevant to the Defendants' state of mind during the relevant period before their arrest in this case. *See Saenz*, 179 F.3d at 689 ("[A] defendant claiming self-defense may show his own state of mind by testifying that he knew of the victim's *prior* acts of violence.") (emphasis added). Like the charge in 2018, any connection between the 2020 alien smuggling conviction and this case is speculative and, therefore, of limited probative value. Thus, the 2020 alien smuggling conviction is inadmissible under Rule 403 for the same two reasons the 2018 charges are inadmissible.

### 3. The 2020 Conviction in This Case

Leon's conviction as a Co-Defendant in this case presents a closer question. Defendant Fraijo and Garcia have indicated they will subpoena Leon to testify in this case. (Hr'g Tr. at 27:1:23, *USA v. Fraijo et al, et al.*, 4:20-cr-00248-TUC-JCH (March 24, 2022).) Whether Leon will testify and whether Defendants will seek to introduce her conviction at trial is unclear. The Court will reserve ruling on the MIL as it relates to Leon's

conviction in this case until time of trial.

## IV. ORDER

For the foregoing reasons, **IT IS ORDERED**:

(1) **GRANTING** the government's Motion in Limine to Admit Defendants' Non-Custodial Silence (**Doc. 154**);

(2) **GRANTING** the government's Motion in Limine to Exclude Hearsay Statements Attributed to Agents (**Doc. 157**);

(3) **GRANTING** the government's Motion in Limine to Exclude Defendants' Irrelevant Post-Arrest Hearsay Statements (**Doc. 158**); and

(4) **GRANTING IN-PART** the government's Motion to Exclude 404(b) Evidence Regarding Co-Defendant Leon (**Doc. 159**). Specifically, the Court **GRANTS** the MIL as it relates to: (1) the 2018 Criminal Complaint against Leon (18-mj-00505-EJM); and (2) evidence related to Leon's 2020 Alien Smuggling Conviction (20-cr-2371-TUC-JCH-DTF). The Court will **RESERVE** ruling on the MIL as it relates to Leon's 2020 conviction in this case (20-cr-00248-TUC-JCH).

Dated this 4th day of April, 2022.

_____
Honorable John C. Hinderaker
United States District Judge